UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| MAYOR AND CITY COUNCIL OF BALTIMORE,<br><br>    Plaintiff,<br><br>vs.<br><br>PHILIP MORRIS USA, INC.; ALTRIA GROUP; R.J. REYNOLDS TOBACCO COMPANY; BRITISH AMERICAN TOBACCO P.L.C.; LIGGETT GROUP LLC; and THE GEORGE J. FALTER COMPANY,<br><br>    Defendants. | Case No.: _____<br><br>Action Filed: November 21, 2022<br>Action Served: January 6, 2022 |

## **DEFENDANT PHILIP MORRIS USA, INC.'S NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, Defendant Philip Morris USA, Inc. ("PM USA") hereby gives notice of removal of this action, captioned *Mayor & City Council of Baltimore v. Philip Morris USA, Inc. et al.*, bearing case number 24C22004904, from the Circuit Court for Baltimore City to the United States District Court for the District of Maryland.

This Court has original federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims and theories of relief that present substantial federal questions and/or are completely preempted by federal law. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) as to any claims over which it does not have original federal question jurisdiction because they form part of the same case or controversy as those claims over which the Court has original jurisdiction.

Plaintiff seeks to hold Defendants—three cigarette manufacturers, two holding companies, and one distributor of cigarettes—responsible for alleged damages arising from the littering of

cigarettes by third parties. Plaintiff asserts that Defendants should be responsible for these purported damages because they choose to use non-biodegradable materials when manufacturing cigarette filters and because they failed to adequately warn consumers about the environmental dangers associated with filtered cigarettes. As Defendants will make clear in forthcoming motions to dismiss, the legal theories underlying these claims are baseless.

Merits aside, the Complaint calls into question a longstanding and comprehensive federal regulatory regime governing how cigarettes must be manufactured, packaged, and marketed. Through various statutes, Congress has established a national policy governing the regulation of tobacco products, including cigarettes. Among other things, Congress expressly determined that cigarettes that were marketed in the United States as of February 15, 2007, could remain on the market as-then manufactured, and that new cigarettes could be brought to market so long as they are "substantially equivalent" to cigarettes that were marketed as of that date, or if they are authorized as a "new" tobacco product. *See* 21 U.S.C. §§ 387e(j), 387j. Congress also delegated to the United States Food and Drug Administration ("FDA") sole authority to establish national standards for cigarette product standards, labeling requirements, and marketing authorizations, and to approve environmental assessments as part of tobacco product marketing authorizations. *See id.*

Though nominally asserted under state law, the Complaint necessarily transgresses this bedrock federal-state division of responsibility and effectively misappropriates to the City the power to regulate tobacco product manufacturing, labeling, and environmental standards. Well-settled law counsels hearing this in a federal forum where the national interest in the uniform regulation of tobacco products will be furthered by a prompt dismissal.

I.  **BACKGROUND**

    A.  **Federal Regulation of Cigarette Manufacturing and Labeling**

    1.    Plaintiff's claims concern the design, labeling, and marketing of certain Defendants' cigarettes. Cigarette design has not significantly changed in over 70 years, including the use of filters. *See, e.g.*, *Reducing the Health Consequences of Smoking: 25 Years of Progress, A Report of the Surgeon General* (1989), 313–314, 318. During nearly all that time, federal law has increasingly regulated the production and marketing of cigarettes. Relevant statutes include:

    2.    <u>Federal Cigarette Labeling and Advertising Act of 1965 ("FCLAA").</u> The FCLAA establishes comprehensive federal standards for cigarette labeling and advertising related to smoking and health, including the requirement that all cigarette labeling include the Surgeon General's Warnings and no other warnings. 15 U.S.C. § 1331 et seq. FCLAA expressly forbids local requirements and prohibitions based on smoking and health "with respect to the advertising or promotion of any cigarettes" where the cigarettes' "packages … are labeled in conformity with" federal law. 15 U.S.C. § 1334(b); *see also, e.g.*, *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 530-31 (1992) (FCLAA preempts claims "based on a failure to warn and the neutralization of federally mandated warnings to the extent that those claims rely on omissions or inclusions in respondents' advertising or promotions.").

    3.    <u>Family Smoking Prevention and Tobacco Control Act of 2009 ("TCA").</u> In 2009, Congress further extended the scope of federal regulation of tobacco products by passing the TCA, which amends the Federal Food, Drug, and Cosmetic Act. The TCA empowers FDA to exclusively regulate the manufacture and labeling of all products containing or derived from tobacco. Pub. L. No. 111-31, 123 Stat. 1176. One of the stated purposes of the Tobacco Control Act was "to authorize [FDA] to set national standards controlling the manufacture of tobacco

products and the identity, public disclosure, and amount of ingredients used in such products." TCA, § 3(3), 123 Stat. at 1782. At the same time, Congress expressly intended "to continue to permit the sale of tobacco products to adults in conjunction with measures to ensure that they are not sold or accessible to underage purchasers." *Id.* § 3(7).

4. As part of the national standards established in the TCA, Congress specified that cigarettes that were marketed in the United States as of February 15, 2007 could remain on the market unchanged, without the need for further FDA authorization. *See* 21 U.S.C. §§ 387e(j), 387j(a). Congress also specified that new cigarettes could be brought to market if FDA issues a marketing authorization that confirms the new cigarettes are "substantially equivalent" to cigarettes that were marketed as of February 15, 2007. *See id.* Otherwise, no new cigarette product may be marketed without FDA first determining, based on a review of the product and "the labeling proposed," among other considerations, that promotion of the product would be "appropriate for the protection of the public health." *Id.* § 387j(b)(1), (c)(4).

5. The TCA also amended the FCLAA's labeling requirements for tobacco products. As amended, federal law requires all cigarettes sold or distributed in the United States to contain at least one of nine specified warnings. *See* 15 U.S.C. § 1333(a)(1). Additionally, federal law requires that these warnings "comprise the top 50 percent of the front and rear panels of the package," that the word "'WARNING' … appear in capital letters," and that "all text shall be in conspicuous and legible 17-point type." *Id.* § 1333(a)(2). Similar requirements also apply to cigarette advertising. *Id.* § 1333(b). The statute grants FDA limited rulemaking authority to modify the labeling requirements within the warnings' "specified area," *id.* § 1333(d), as well as require additional disclosures other than "on the face of any cigarette package or advertisement," *id.* § 1333(e)(3).

6.      Consistent with the goal of establishing uniform, national standards for regulation of tobacco products, Congress has expressly preempted certain state and local regulation of tobacco products.

7.      *First*, the TCA generally bars States and localities from establishing or maintaining any tobacco-product requirement that "is different from, or in addition to, any requirement under the provisions of this subchapter relating to tobacco products standards, premarket review, adulteration, misbranding, labeling, registration, good manufacturing standards, or modified risk tobacco products." 21 U.S.C. § 387p(a)(2)(A). The statute defines "labeling" broadly to include "all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." 21 U.S.C. § 321(m). The statute likewise describes a "product standard" broadly to include "provisions respecting the construction, components, ingredients, additives, constituents, … and properties of the tobacco product." 21 U.S.C. § 387g(a)(4)(B)(i). Under the Tobacco Control Act and FDA regulations, filters are "ingredients" and "components" of cigarettes. *See, e.g.*, 21 C.F.R. § 1114.3 (defining "ingredient" to include components such as a filter); FDA, Cigarettes, https://www.fda.gov/tobacco-products/products-ingredients-components/cigarettes ("The basic components of most cigarettes are tobacco, chemical additives, a filter, and paper wrapping.").

8.      *Second*, the TCA supplements the FCLAA's existing preemption provision, *see supra* ¶ 2, to bar States and localities from imposing "bans or restrictions" on the "content" of "the advertising or promotion of any cigarettes." 15 U.S.C. § 1334(c).

9.      <u>The National Environmental Policy Act ("NEPA").</u>  NEPA generally requires federal agencies to assess the environmental impacts of their proposed actions or regulations. *See, e.g.*, 42 U.S.C. § 4331. FDA is tasked with applying that national environmental policy, including

5

to assess the environmental impacts of "disposal from use of FDA-regulated articles." 21 C.F.R. § 25.40(a). FDA must implement NEPA as part of its regulatory oversight of tobacco products, including when FDA evaluates tobacco product marketing applications. *See* Premarket Tobacco Product Applications and Recordkeeping Requirements, 86 Fed. Reg. 55330 (Oct. 5, 2021); *see also* 21 C.F.R. § 25.40 (implementing environmental assessment requirements imposed by NEPA on tobacco product marketing applications). The FDA has actively discharged its responsibilities under these provisions, and has promulgated a rule regarding the environmental impact of certain tobacco-related applications. National Environmental Policy Act; Environmental Assessments for Tobacco Products; Categorical Exclusions, 80 Fed. Reg. 57531, 57532 (Sept. 24, 2015) (codified at 21 C.F.R. § 25.35).

**B.   Summary of Allegations**

10.   Plaintiff, the Mayor and City Council of Baltimore, commenced this action on November 21, 2022, in the Circuit Court for Baltimore City. The Complaint names the following defendants: Philip Morris USA, Inc.; Altria Group, Inc.; R.J. Reynolds Tobacco Company; British American Tobacco P.L.C.; Liggett Group LLC; and the George J. Falter Company. Compl. ¶¶ 11-16.

11.   The gravamen of the Complaint is that the Defendant cigarette manufacturers should be liable for cigarette litter caused by unrelated third parties who improperly disposed of their cigarettes in the City of Baltimore. Plaintiff asserts the following claims: strict liability for failure to warn; strict liability for design defect; negligent design defect; negligent failure to warn; public nuisance, trespass; violation of the Maryland Illegal Dumping and Litter Control Law; and various violations of the City of Baltimore's municipal code. *Id*. ¶¶ 50-170. In addition to money damages, Plaintiff seeks injunctive and equitable relief, including "the immediate and complete

abatement" of the "nuisance" purportedly caused by the manufacture and distribution of filtered cigarettes. *Id.*, Prayer for Relief.

12. Plaintiff's support for its claims principally rests on allegations that the manufacturers (i) impermissibly produce cigarette filters that are non-biodegradable contrary to public health interests and (ii) have failed to adequately warn consumers about the environmental risks associated with discarded cigarette butts. *Id.* ¶¶ 30-37, 98-129, 145-170.

13. On production, the Complaint's claims target cigarette manufacturers' choice to "make cigarette filters non-biodegradable" by using a "material called cellulose acetate," as opposed to "making biodegradable cigarette filters." *Id.* ¶¶ 2, 30. Defendants' alleged use of nonbiodegradable materials in the filter-manufacturing process underpins the Complaint's claims that cigarettes "permanently litter" the ground and lead to "public health" problems and environmental harm. *Id.* ¶¶ 2, 30-31, 121; *see also, e.g.*, *id.* ¶¶ 10, 32, 35, 37, 114, 117, 123, 139.

14. On warnings, the Complaint's claims allege that Defendants' filtered cigarettes "lacked adequate warnings and/or instructions concerning the dangers and hazards as a result of the non-biodegradable cigarette filters," including because Defendants "chose not to include warnings on cigarette packages" informing smokers of the alleged environmental harms connected to improper disposal. *Id.* ¶¶ 34, 146. These "omission[]"-based allegations stemming from Defendants' packaging and "marketing" appear throughout the Complaint. *Id.* ¶¶ 34, 136(a), 154; *see also, e.g.*, *id.* at ¶¶ 56, 65, 73, 81, 89, 145-170.

## II. THE ACTION IS REMOVABLE

15. Subject to exceptions not relevant here, the federal removal provision authorizes the removal to district court of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Federal district courts, in

turn, "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *Id.* § 1331.

16. In certain scenarios, suits purporting to raise only state-law causes of action may nevertheless "arise under" federal law, and thus be subject to proper removal under 28 U.S.C. §§ 1441(a) and 1331. That rule applies here for at least two independent and alternative reasons.

17. *First*, removal is authorized because the Complaint necessarily raises disputed and substantial federal questions that a federal forum may entertain without disturbing a congressionally approved balance of responsibilities between the federal and state judiciaries. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005). Federal law governs all aspects of the tobacco-product industry relevant here, including by permitting the sale of traditional cigarettes, providing the FDA with authority to regulate filters and other cigarette ingredients, and detailing the warning statements a tobacco product must include. The causes of action as alleged in the Complaint amount to an end run around federal policy decisions concerning the regulation of tobacco products, threaten to upset longstanding federal-state relations, second-guess policy decisions made by Congress and the Executive Branch, and usurp divisions of responsibility set forth in federal statutes.

18. *Second*, removal is authorized because Plaintiff's claims are completely preempted by the Administrative Procedure Act, the Tobacco Control Act, and related implementing regulations, which together provide an exclusive federal remedy for plaintiffs seeking to challenge federal regulations concerning tobacco product manufacturing and marketing standards. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987).

A.      **The Complaint Necessarily Raises Disputed and Substantial Federal Issues**

19.     Defendants may properly remove suits alleging state-law causes of action if the "state-law claim[s] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. Applying this test "calls for a common-sense accommodation of judgment to the kaleidoscopic situations that present a federal issue." *Id.* at 313.

20.     Plaintiff's lawsuit warrants removal under this standard. Federal law expressly authorizes the sale of cigarettes on the market as of 2007. *Supra* ¶ 4. And a comprehensive federal scheme allocates to FDA exclusive authority to further regulate tobacco product manufacturing standards—including by assessing cigarette ingredients, like filters—weigh the public health risks and benefits of tobacco products, and evaluate the environmental effect of FDA's tobacco-product standards. *Supra* ¶¶ 1, 3, 7, 9. Yet the Complaint prolifically relies on allegations that Defendants should not have manufactured cigarettes using non-biodegradable filters and that such filters "do not significantly reduce" consumers exposure to "toxic chemicals." Compl. ¶ 10; *see also, e.g.*, *id.* ¶¶ 30-35, 37, 53, 63, 65, 71, 73, 79, 81, 87, 89, 92, 95, 99-110, 114, 117-124, 130-139, 142, 147-152, 157, 160-165. Plaintiff's claims not only seek to impermissibly impose a City-specific tobacco-product standard about the permissible composition of cigarette filters. *Cf.* 21 U.S.C. § 387p(a)(2)(A) (barring states and localities from imposing tobacco-product standards).[1] They also would require contradicting Congress's and FDA's assessment of the "public health"

---

[1] The TCA's preemption-clause carveout for "product liability" actions, 21 U.S.C. § 387p(b), does not license states to circumvent the prohibition on cities establishing "product standards" for tobacco products beyond those established by federal law, *id.* § 387p(a)(2)(A). Nor does it salvage plaintiff's littering, nuisance, or packaging claims in any event.

considerations cigarette filters present. *Compare, e.g.*, *id.* ¶¶ 133-34, 139, 140 (Defendants' conduct constitutes "unreasonable violation of the public rights" for purposes of nuisance claim because filters' harms "outweigh[]" their "social 'benefit,'" including ability to "decrease the toxins" inhaled by consumers), *with* 21 U.S.C. § 387j(c)(2)(A) (vesting FDA with power to determine whether marketing of tobacco product "would be appropriate for protection of public health").

21.     Federal law also pervasively governs the content, size, and format of cigarette packaging, labeling, and related promotional materials. *Supra* ¶ 2, 5, 7-8. Congress has barred states and localities from supplementing these labels with additional content. *Id.* ¶ 2, 7, 8; *see also, e.g.*, *Cipollone*, 505 U.S. at 530-31. Yet the Complaint relies repeatedly on "omission[]"-based allegations that Defendants failed to include adequate "warnings on cigarette packages" and in "marketing" channels regarding the negative consequences of cigarette litter. Compl. ¶¶ 34, 131, 136(a); *see also, e.g.*, *id.* at ¶¶ 56, 65, 73, 81, 89, 145-170. As such, Plaintiff's claims necessarily require assessing the adequacy of federal regulations' mandated disclosures on cigarette packaging.

22.     The Complaint thus challenges—and necessarily requires evaluation of—a federal regulatory scheme and the adequacy of a past federal decision regarding the "efficacy and safety" of tobacco products and sufficiency of "federal duties to disclose" in tobacco-products' labeling. *Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 210-11 (4th Cir. 2022) (citation omitted). This gives rise to federal question jurisdiction. *See Bd. Of Comm'rs of Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co., L.L.C.*, 850 F.3d 714, 724 (5th Cir. 2017) (in the context of comprehensive regulatory scheme, nuisance claims amount to "a collateral attack … premised on the notion that the scheme provides inadequate protection" (brackets omitted)); *Pet Quarters,*

*Inc. v. Depository Trust and Clearing Corp.*, 559 F.3d 772, 779 (8th Cir. 2009) (complaint "presents a substantial federal question because it directly implicates actions taken by" a federal agency); *McKay v. City and Cty. of San Francisco*, 2016 WL 7425927, at *4 (N.D. Cal. Dec. 23, 2016) (denying remand and ruling that federal jurisdiction lies under *Grable* because state-law claims were "tantamount to asking the Court to second guess the validity of the FAA's decision").

### B. The Action is Completely Preempted by Federal Law

23.  A putatively state-law action is likewise removable where "the extraordinary pre-emptive power [of federal law] converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987). A state cause of action is preempted under this "complete preemption" doctrine where a federal statutory scheme "provide[s] the exclusive cause of action for the claim asserted and also set[s] forth procedures and remedies governing that cause of action." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003). It also requires a determination that the state-law cause of action falls within the scope of the federal cause of action, including where it "duplicates, supplements, or supplants" that cause of action. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004).

24.  Both requirements for complete preemption are present here. As set forth above, Plaintiff's suit amounts to a collateral attack on the decisions of a federal regulatory scheme that expressly and completely occupies the field of tobacco product manufacturing and labeling standards. The TCA authorizes any "interested person" to petition FDA to amend or revoke a tobacco product standard. 21 U.S.C. § 387g(d)(4)(A). More generally, FDA regulations and the Administrative Procedure Act afford any "interested person the right to petition for the issuance,

11

amendment, or repeal of a rule" issued by a federal agency. 5 U.S.C. § 553; *see* 21 C.F.R. Part 10.

Congress and FDA have thus directed all challenges to FDA's authorization of filtered cigarettes and their required disclosures, or petitions for FDA to address concerns about the environmental impacts of certain types of cigarette filters, to proceed through federal statutory channels. Plaintiff's claims are a transparent effort to avoid, and indeed supplant, the required procedures set forth in the TCA, Administrative Procedure Act, and FDA regulations. By short-circuiting the regular rulemaking process, Plaintiff's state-law claims would undercut "clearly expressed congressional intent" that federal law provide the comprehensive regulatory framework for tobacco products. *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 231 (4th Cir. 1993). Resolution of the claims would require precisely the cost-benefit analysis—including environmental analysis—that FDA is required by statute to undertake and would directly interfere with FDA's determinations. Because Congress has established a clear and detailed procedure by which interested parties can push for stricter or different regulatory standards, Plaintiff's claims are completely preempted.

## III.   ALL OTHER REMOVAL REQUIREMENTS ARE SATISFIED

### A.   The Notice of Removal Is Timely

25.   This Notice of Removal is timely filed. PM USA received the Complaint through service on January 6, 2023. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served on PM USA are attached hereto as **Exhibits 1A** and **1B**. Because PM USA filed the Notice of Removal on February 3, 2023, removal is timely. *See* 28 U.S.C. § 1446(b)(1).

### B. Venue in this Court Is Proper

26. The United States District Court for the District of Maryland is the appropriate venue for removal pursuant to 28 U.S.C. § 1441(a) because it embraces the place where Plaintiff originally filed this case, in the Circuit Court for Baltimore City, Maryland. *See* 28 U.S.C. § 100; 28 U.S.C. § 1441(a). Pursuant to Local Rule 501.2 and 28 U.S.C. § 100, the action should be assigned to the Northern Division of this Court.

### C. All Defendants Consent to Removal

27. For purposes of removal based on federal question jurisdiction under 28 U.S.C. § 1331 and pursuant to 28 U.S.C. § 1446(b)(2)(A), all defendants who have been properly joined and served must consent to removal.

28. Each of the following Defendants consents to removal, as indicated by their signing below: Altria Group; British American Tobacco p.l.c.; Liggett Group LLC; R. J. Reynolds Tobacco Co.; and The George J. Falter Company. The Defendants listed in this paragraph expressly reserve, and do not waive, all available defenses, including but not limited to those related to lack of personal jurisdiction and proper service.

29. By filing this Notice of Removal, PM USA does not waive any defense that may be available and reserves all such defenses. If any question arises as to the propriety of the removal to this Court, PM USA requests the opportunity to present a brief and oral argument in support of its position that this case has been properly removed.

### D. Notice of Removal

30. Pursuant to 28 U.S.C. § 1446(d), PM USA will give written notice of the filing of this Notice of Removal to all parties of record in this matter and will file a copy of this Notice with the Clerk of the Circuit Court for Baltimore City.

## CONCLUSION

WHEREFORE, PM USA hereby removes this action from the Circuit Court for Baltimore City to the United States District Court for the District of Maryland.

DATED: February 3, 2023

/s/   *George F. Ritchie*
George F. Ritchie (Fed. Bar No. 22408)
Lauren E. Lake (Fed. Bar No. 20488)
GORDON FEINBLATT LLC
1001 Fleet Street, Suite 700
Baltimore, MD  21202
gritchie@gfrlaw.com
llake@gfrlaw.com
410-576-4131 (Phone/Fax)

John C. Massaro*
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave, NW
Washington, DC 20001
202-942-5000
John.Massaro@arnoldporter.com

Sean Morris*
ARNOLD & PORTER KAYE SCHOLER LLP
777 S. Figueroa Street
44th Floor
Los Angeles, CA 90017
213-243-4000
Sean.Morris@arnoldporter.com

*\* denotes national counsel who will seek pro hac vice admission*

**Attorneys for Defendant PHILIP MORRIS USA, INC.**

**WRITTEN CONSENT OF OTHER DEFENDANTS**

*/s/ George F. Ritchie*
George F. Ritchie (Fed. Bar No. 22408
Lauren E. Lake (Fed. Bar No. 20488)
GORDON FEINBLATT LLC
1001 Fleet Street, Suite 700
Baltimore, MD  21202
gritchie@gfrlaw.com
llake@gfrlaw.com
410-576-4131 (Phone/Fax)

John C. Massaro*
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave, NW
Washington, DC 20001
202-942-5000
John.Massaro@arnoldporter.com

Sean Morris*
ARNOLD & PORTER KAYE SCHOLER LLP
777 S. Figueroa Street
44th Floor
Los Angeles, CA 90017
(213) 243-4000
Sean.Morris@arnoldporter.com

*denotes national counsel who will seek pro hac vice admission*

**Attorneys for Defendant ALTRIA GROUP**

*(reserving all defenses including but not limited to the defense of lack of personal jurisdiction)*

*/s/  John B. Isbister*
John B. Isbister (Fed. Bar No. 00639)
Jaime W. Luse (Fed. Bar No. 27394)
TYDINGS & ROSENBERG LLP
One East Pratt Street, Suite 901
Baltimore, MD 21202
Telephone: 410-752-9700
Facsimile: 410-727-5460

**Attorneys for Defendant**
**BRITISH AMERICAN TOBACCO**
**p.l.c.**

*(reserving all defenses including but not limited to the defense of lack of personal jurisdiction)*


*/s/ John Parker Sweeney*
John Parker Sweeney (Bar No. 08761)
Marc A. Nardone (Bar No. 18811)
Bradley Arant Boult Cummings LLP
1615 L Street N.W., Suite 1350
Washington, D.C. 20036
Phone: 202-393-7150
Facsimile: 202-347-1684
jsweeney@bradley.com
mnardone@bradley.com

Noel J. Francisco*
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Phone: 202-579-3939
Facsimile: 202-626-1700
njfrancisco@jonesday.com

*\*denotes counsel who will seek pro hac vice admission*

**Counsel for Defendants R. J. REYNOLDS TOBACCO CO. and THE GEORGE J. FALTER COMPANY**

Marc A. Campsen
Federal Bar No. 29791
Wright, Constable & Skeen, LLP
7 Saint Paul Street, 18th Floor
Baltimore, Maryland 21202
Tele: 410-659-1343
E-mail: mcampsen@wcslaw.com

Kelly Anne Luther*
Kasowitz Benson Torres LLP
1441 Brickell Avenue
Suite 1420
Miami, Florida  33131
Tele:  786-587-1045
E-mail:  kluther@kasowitz.com

Leonard A. Feiwus*
Nancy E. Kaschel*
Julie R. Fischer*
Kasowitz Benson Torres LLP
1633 Broadway
New York, New York 10019
LFeiwus@kasowitz.com
Tele:  212-506-1785
Nkaschel@kasowitz.com
Tele:  212-506-1779
jfischer@kasowitz.com
Tele:  212-506-1764

*denotes national counsel who will seek pro hac vice admission*

**Attorneys for Defendant LIGGETT GROUP LLC**

17

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this  3rd  day of February, 2023, a copy of the foregoing Notice of Removal was served via the Court's electronic filing system and by electronic mail on the following counsel of record:

Marc Grossman, Esq. (Pro Hac Vice Forthcoming)
Milberg Coleman Bryson Phillips Grossman LLP
100 Garden City Plaza, Suite 500
Garden City, NY  11530

Roy L. Mason, Esq.
Zachary Howerton, Esq.
Smouse & Mason,LLC
223 Duke of Gloucester Street
Annapolis, MD  21401

Andrew A. Lemmon, Esq. (Pro Hac Vice Forthcoming)
Milberg Coleman Bryson Phillips Grossman LLP
PO Box 904
Hahnville, Louisiana 70057

*Attorneys for Plaintiff*

John C. Massaro*
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave, NW
Washington, DC 20001

Sean Morris
Arnold & Porter Kay Scholer LLP
777 Figueroa Street, 44th Floor
Los Angeles, CA  90017

*Attorneys for Philip Morris USA, Inc.
and Altria Group*

John B. Isbister (Fed. Bar No. 00639)
Jaime W. Luse (Fed. Bar No. 27394)
Tydings & Rosenberg LLP
One East Pratt Street, Suite 901
Baltimore, MD 21202

*Attorneys for British American Tobacco, p.l.c.*

John Parker Sweeney (Bar No. 08761)
Marc A. Nardone (Bar No. 18811)
Bradley Arant Boult Cummings LLP
1615 L Street N.W., Suite 1350
Washington, D.C. 20036

Noel J. Francisco*
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113

*Attorneys for R. J. Reynolds Tobacco Co. and The George J. Falter Company*

Marc A. Campsen
Federal Bar No. 29791
Wright, Constable & Skeen, LLP
7 Saint Paul Street, 18th Floor
Baltimore, Maryland 21202

Kelly Anne Luther*
Kasowitz Benson Torres LLP
1441 Brickell Avenue
Suite 1420
Miami, Florida  33131

Leonard A. Feiwus*
Nancy E. Kaschel*
Julie R. Fischer*
Kasowitz Benson Torres LLP
1633 Broadway
New York, New York 10019

*Attorneys for Liggett Group LLC*

                                         *s/ George F. Ritchie*
                                         George F. Ritchie