**UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(Northern Division)**

| | |
|---|---|
| MAYOR AND CITY COUNCIL OF BALTIMORE | |
| Plaintiff, | |
| vs. | Case Number: 1:23-cv-00303-JRR |
| PHILIP MORRIS USA, INC. *et al.,* | |
| Defendants. | [Removal from the Circuit Court for Baltimore City] |


**REPLY BRIEF OF MAYOR AND CITY COUNCIL OF BALTIMORE**

## TABLE OF CONTENTS

I.   REMAND TO STATE COURT IS REQUIRED BECAUSE THERE IS NO SUBJECT-MATTER JURISDICTION ....................................................................... 3

   A.   The City's Complaint Does Not "Arise Under" Federal Law. ..................................... 3

      1.   The City's Complaint Does Not Necessarily Raise Any Disputed Issues of Federal Law ........................................................................................................................ 4

         a.   The FCLAA Preempts Only Claims Related to Both Smoking and Health ................ 5

         b.   The TCA Does Not Preempt the City's Failure to Warn Claims Because They Do Not Demand that Defendants Alter Their Labeling ................................................................ 6

         c.   The TCA Does Not Preempt the City's Defective Design Claims Because They Do Not Demand that Defendants Alter Cigarette Designs Contrarily to the TCA's Requirements. ..................................................................................................................... 9

         d.   The TCA and the FDA's Environmental Impact Assessments Do Not Preempt the City's Nuisance Claims ................................................................................................... 10

      2.   Defendants Failed to Show That the Complaint Raises Questions of Federal Law That Are "Substantial" to the Federal System as a Whole ................................................ 13

      3.   Resolution in a Federal Court Would Disrupt the Congressionally-Approved Federal-State Balance ......................................................................................................... 14

   B.   The Tobacco Control Act Does Not Completely Preempt the City's Claims ............. 16

II.   CONCLUSION ...................................................................................................... 19

i

**Cases**

*Bader Farms, Inc. v. Monsanto Co.*, 2017 U.S. Dist. LEXIS 21925 (2017) ............................... 14

*Bd. Of Comm'rs of Se. La. Flood Prot. Auth.- E. v. Tenn. Gas Pipeline Co., L.L.C.*, 850 F.3d 714 (5th Cir. 2017) ........................................................................................................................ 14

*Burrell v. Bayer Corp.*, 918 F.3d 372 (4th Cir. 2019) ...................................................... 4, 13, 17

*Chem. Specialties Mfrs. Ass'n v. Allenby,* 958 F.2d 941 (9th Cir. 1992) ...................................... 8

*Cipollone v. Liggett Grp.*, 505 U.S. 504 (1992) ...................................................................... 7, 11

*Cnty. of San Mateo v. Chevron Corp.*, 294 F. Supp. 3d 934 (N.D. Cal. 2018) ............................ 4

*Comer v. McCaskill*, No. 1:21cv962, 2022 U.S. Dist. LEXIS 137554  (M.D.N.C. Aug. 2, 2022) ........................................................................................................................................... 17

*Dagostine v. Pendleton*, No. 2:22-cv-00220, 2022 U.S. Dist. LEXIS 207079 (S.D.W. Va. Nov. 15, 2022) .................................................................................................................................. 18

*Eastchester Tobacco & Vape Inc. v. Town of Eastchester, No*. 21 CV 6996 (VB), 2022 U.S. Dist. LEXIS 136467 (S.D.N.Y. Aug. 1, 2022) ................................................................................... 3

*Empire HealthChoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 126 S. Ct. 2121, 165 L. Ed. 2d 131 (2006) .................................................................................................................................. 16, 18

*Flying Pigs, L.L.C. v. RRAJ Franchising, L.L.C.*, 757 F.3d 177 (4th Cir. 2014) .......................... 5

*Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1 (1983)................................... 4, 5

*Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 103 S. Ct. 2841 (1983) .......... 3

*Grable & Sons Metal Prods. v. Darue Eng'g & Mfg., 545 U*.S. 308, 125 S. Ct. 2363 (2005) 5, 16, 17, 18

*Gunn v. Minton*, 568 U.S. 251 (2013) ................................................................................. 4, 13, 15

*Johnson v. Am. Towers, L.L.C.*, 781 F.3d 693 (4th Cir. 2015) ................................................... 18

*Lontz v. Tharp*, 413 F.3d 435 (4th Cir. 2005) ........................................................................... 18

*Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 121 S. Ct. 2404 (2001)........................................ 6

*Mayor & City Council of Balt. v. BP P.L.C.,* 31 F.4th 178 (4th Cir. 2022), *cert. denied*, *BP p.l.c. v. Mayor of Balt.*, No. 22-361, 2023 U.S. LEXIS 1773 (Apr. 24, 2023) ..................... 12, 15, 19

*McKay v. City & Cnty. of S.F., No*. 16-cv-03561 NC, 2016 U.S. Dist. LEXIS 178436 (N.D. Cal. Dec. 23, 2016) ......................................................................................................................... 14

*Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 92 L. Ed. 2d 650, 106 S. Ct. 3229 (1986) ............................................................................................................................................ 4

*Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S. Ct. 1542 (1987)........................................ 2, 18

*Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148 (4th Cir. 1994) ................................. 16

Nat'l Ass'n of Tobacco Outlets v. City of Providence, 731 F.3d 71 (1st Cir. 2013) .................... 3

*People v. JUUL Labs, Inc.*, 2022 NY Slip Op 32121(U) (Sup. Ct.)........................................ 3, 20

*Pet Quarters, Inc. v. Depository Tr. & Clearing Corp.*, 559 F.3d 772 (8th Cir. 2009)............... 14

*Philip Morris USA, Inc. v. Lourie*, 198 So. 3d 975 (Fla. Dist. Ct. App. 2016) ................. 3, 10, 14

*Pinney v. Nokia, Inc.*, 402 F.3d 430 (4th Cir. 2005)...................................................... 4, 5

*Pressl v. Appalachian Power Co.*, 842 F.3d 299 (4th Cir. 2016) ................................... 17

*R.J. Reynolds Tobacco Co. v. City of Edina,* 60 F.4th 1170 (8th Cir. 2021);................. 10, 14, 17

*R.J. Reynolds Tobacco Co. v. Cnty. of L.A.,* 29 F.4th 542 (9th Cir. 2022)........................ 2, 3, 20

*Rosciszewski v. Arete Assocs.*, 1 F.3d 225 (4th Cir. 1993) ........................................... 21

*Skidmore v. Norfolk S. Ry. Co.*, 1 F.4th 206 (4th Cir. 2021) ......................................... 19

*State ex rel. Stein v. Eonsmoke, LLC*, 423 F. Supp. 3d 162 (M.D.N.C. 2019) ................. 3, 14, 21

*Tadjer v. Montgomery Cnty.*, 300 Md. 539 A.2d 1321 (1984) ..................................... 12

*U.S. Smokeless Tobacco Mfg. Co. v. City of N.Y.*, 703 F. Supp. 2d 329 (S.D.N.Y. 2010).. 1, 3, 15, 20

*U.S. Smokeless Tobacco Mfg. Co., LLC v. City of N.Y.*, 2011 U.S. Dist. LEXIS 133018 (S.D.N.Y. Nov. 15, 2011) .......................................................................... 20

*W. Virginia State Univ. Bd. of Governors v. Dow Chem. Co.,* 23 F.4th 288 (4th Cir. 2022)....... 13

## Statutes

15 U.S.C. § 1333....................................................................................................... 7

15 U.S.C. § 1334(b) .................................................................................................. 5

15 U.S.C. § 1334(c) .................................................................................................. 5

15 U.S.C. §§ 1331 -1341 ........................................................................................... 5

21 C.F.R. § 1140.30 .................................................................................................. 8

21 C.F.R. § 1140.32 .................................................................................................. 8

21 C.F.R. § 1140.34 .................................................................................................. 8

21 U.S.C. § 387p(a)(1)........................................................................................ 1, 10, 13

21 U.S.C. § 387p(a)(2)(A) ........................................................................................ 17

21 U.S.C. § 387p(a)(2)(B) ................................................................................... passim

28 U.S.C. § 1331 ....................................................................................................... 3

28 U.S.C. § 1447 ....................................................................................................... 2

49 U.S.C. § 40103(a) ................................................................................................ 12

## Other Authorities

Chapman & S.M. Carter, *"Avoid Health Warnings on All Tobacco Products for Just as Long as We Can": A History of Australian Tobacco Industry Efforts To Avoid, Delay and Dilute Health Warnings on Cigarettes*, 12 TOBACCO CONTROL (SUPP. 3) iii13 (2003). ...................... 7

*H.R. Rep. No. 1476, 94th Cong., 2d Sess.* 130 (1976) ............................................... 19

**INTRODUCTION**

This case belongs in state court because it does not meet the requirements for removal and this Court lacks subject matter jurisdiction over the City's exclusively state-law claims. Indeed, the City brought well-established state law causes of action for concrete injuries to its own environment, sounding in Maryland statutory law, common law, and Baltimore City Code. *See* City's Memo. in Support of Its Motion for Remand, Dkt. 37-1, at 5–6. In an attempt to create grounds for removal, Defendants misconstrue the substance of the City's claims in order to argue that they raise a significant federal issue and are completely preempted by an amalgam of federal statutes. Defendants' Notice of Removal, Dkt. 1, and Opposition to Plaintiff's Motion to Remand, Dkt. 38 ("Opp."). Defendants' arguments all rely on a single conclusory premise: that the Family Smoking Prevention and Tobacco Control Act ("TCA"), Federal Cigarette Labeling and Advertising Act of 1965 ("FCLAA"), and National Environmental Policy Act ("NEPA") grant the FDA *exclusive* authority to regulate the manufacture, sale, promotion, and distribution of cigarettes at all levels of government. Opp. at 5, 10, 13, 14, 18, 21. However, Defendants' reliance is misplaced, because not one of these statutes provides federal courts subject matter jurisdiction over the City's exclusively state-law claims.

In fact, the TCA explicitly preserves the historical right of state and local governments to regulate the sale and distribution of tobacco products. *See* 21 U.S.C. § 387p(a)(1) ("nothing in this subchapter, or rules promulgated under this subchapter, shall be construed to limit the authority of…a State or political subdivision of a State…to enact, adopt, promulgate, and enforce any law, rule, regulation, or other measure with respect to tobacco products…"). The FLCAA is limited to prohibitions on smoking and health, which is inapplicable to the instant case. *See* 15 U.S.C. § 1334(b) ("No requirement or prohibition based on smoking and health shall be imposed

1

under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act.").  Lastly, NEPA operates to require certain assessments when a federal agency develops a proposal to take a major federal action, which is also inapplicable.  *See* 42 U.S.C.S. § 4332(C) ("all agencies of the Federal Government shall—include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on the environmental impact of the proposed action….").

The City seeks to recover money damages, fines, and the costs to abate this nuisance. Compl. ¶ 171.  Contrary to Defendants' misstatements, this suit is not seeking injunctive relief in the form of new labeling, manufacture, or design requirements. Opp. at 2, 4, 20. It is seeking compensation for the loss of value in Baltimore City's properties, the loss of tax, sales, and licensing revenue to Baltimore City resulting from Defendants' actions and omissions, plus the costs to Baltimore City of cleaning up and disposing of the Defendants' litter, past, present, and future.  ¶ 171.  Consequently, the statutes on which Defendants rely have no bearing on the City's claims for relief.  Congress must clearly manifest its intent for a federal scheme to displace the City's causes of action by preemption. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 67 (1987). Defendants have failed to identify any indicia of this intent in the statutory language.

In sum, Defendants have failed to establish the constitutionally irreducible requirement of subject-matter jurisdiction to support removal and this action should be remanded to the Circuit Court for Baltimore City from which it originally arose. The City respectfully requests that this Honorable Court grant its motion to remand, pursuant to 28 U.S.C. § 1447, and properly return this case to state court.

## I.   REMAND TO STATE COURT IS REQUIRED BECAUSE THERE IS NO SUBJECT-MATTER JURISDICTION

As detailed in full below, Defendants have failed to show that Plaintiff's exclusively state law claims require adjudication of a federal issue.  Additionally, Defendants have failed to show that the Congress evinced an intent to preempt the City's claims.  Accordingly, Defendants have failed to establish the necessary requirements for subject-matter jurisdiction.

### A.   The City's Complaint Does Not "Arise Under" Federal Law.

The Complaint's causes of action do not "necessarily raise" any federal issue. For a complaint to necessarily raise a federal issue under 28 U.S.C. § 1331, the federal issue must be a "necessary element of one of the well-pleaded state claims." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 13, 103 S. Ct. 2841, 2848 (1983). The Fourth Circuit has, in turn, repeatedly held:

> To necessarily raise a federal issue, a state law claim must hinge on the determination of a federal issue. The federal issue must be "essential to resolving a state-law claim, meaning that '*every* legal theory supporting the claim requires the resolution of a federal issue.'" *Burrell v. Bayer Corp.*, 918 F.3d 372, 383 (4th Cir. 2019) (quoting *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004)). If, on the other hand, the plaintiff "can establish all the necessary elements entirely independently of federal law," a federal issue is not necessarily raised. *Id.* at 382.

*Vlaming v. W. Point Sch. Bd.*, 10 F.4th 300, 306 (4th Cir. 2021). "In other words, if the plaintiff can support his claim with *even one* theory that does not call for an interpretation of federal law, his claim does not 'arise under' federal law for purposes of § 1331." *Dixon*, 369 F.3d at 817 (emphasis added). A claim is "necessarily raised" under this theory when it requires a showing that Defendants violated federal law and cannot meet its *prima facie* burden without relying on a federal standard.  *Burrell v. Bayer Corp.*, 918 F.3d 372, 382 (4th Cir. 2019); *Gunn v. Minton*, 568 U.S. 251, 259 (2013).

3

Defendants have, a second time, "not pointed to a *specific* issue of federal law that must necessarily be resolved to adjudicate the state law claims." *Cnty. of San Mateo v. Chevron Corp.*, 294 F. Supp. 3d 934, 938 (N.D. Cal. 2018) (emphasis added). As outlined below, not one of the federal statutes that Defendants raise is relevant, much less essential to the resolution of the City's state-law claims.  Further, "a preemption defense 'that raises a federal question is inadequate to confer federal jurisdiction." *Pinney v. Nokia, Inc.*, 402 F.3d 430, 446 (4th Cir. 2005) (quoting *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 808, 92 L. Ed. 2d 650, 106 S. Ct. 3229 (1986)).

Defendants have failed to prove that the City's *prima facie* case "requir[es] resolution of a substantial question of federal law, or even interpreting federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 13 (1983). Instead, they "mostly gesture to federal law and federal concerns in a generalized way." *Cnty. of San Mateo*, 294 F. Supp. 3d at 938. Thus, under the well-pleaded Complaint rule, removal is improper. Defendants also fail to show that the Complaint necessarily invokes disputed and substantial questions of federal law, and therefore removal under *Grable* is improper. *See Grable & Sons Metal Prods. v. Darue Eng'g & Mfg., 545 U.*S. 308, 125 S. Ct. 2363 (2005).

## 1.     The City's Complaint Does Not Necessarily Raise Any Disputed Issues of Federal Law

The City's Complaint does not necessarily raise any disputed issue of federal law, substantial or otherwise. Defendants assert that "federal law governs all aspects of the tobacco-product industry relevant here," yet their notice of removal cites no support for this assertion. Not. ¶ 17. Instead, Defendants have cobbled together a handful of federal laws that they claim comprise a federal regulatory scheme. Not. ¶ 18, 22, 24. Not only are these assertions factually inaccurate, but they misrepresent the purpose of this suit. This suit does not seek to regulate the

4

tobacco industry or challenge FDA standards; rather, it seeks compensation for the harm done to the environment as a result of the Defendants' actions. Accordingly, none of the claims asserted expressly requires the intervention of federal law. *See Pinney*, 402 F.3d at 442.

> a. *The FCLAA Preempts Only Claims Related to Both Smoking and Health*

The FCLAA preempts specific claims limited to smoking and health: "No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act." 15 U.S.C. § 1334(b).  Further, the FCLAA provides an exception for "time, place, and manner" restrictions on labeling, demonstrating Congressional intent against preemption of all local labeling requirements. *Id.* § 1334(c). At any rate, Defendants overread the FCLAA's scope. They provide no evidence that requirements relating to "smoking and health" include the City's alleged environmental harms.  The Complaint specifically states that the City does not allege any human health-related damages. Compl. ¶ 38. The purpose of the FCLAA regulates labeling and advertising concerning the effects of smoking on human health. *See generally* 15 U.S.C. §§ 1331-1341. With this purpose in mind, the Supreme Court upheld regulations on the location and size of advertisements:

> Although Congress has taken into account the unique concerns about cigarette smoking and health in advertising, there is no indication that Congress intended to displace local community interests in general regulations of the location of billboards or large marquee advertising, or that Congress intended cigarette advertisers to be afforded special treatment in that regard. Restrictions on the location and size of advertisements that apply to cigarettes on equal terms with other products appear to be outside the ambit of the pre-emption provision. Such restrictions are not "based on smoking and health."

*Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 551-52, 121 S. Ct. 2404, 2420 (2001).  Similarly, the Court held that the FCLAA does not preempt claims based on fraud:

New Jersey's common-law duty to avoid false statements of material fact -- as applied to the cigarette companies' behavior -- is not "based on smoking and health," the same must be said of New Jersey's common-law duty to warn about a product's dangers. *Each* duty transcends the relationship between the cigarette companies and cigarette smokers; *neither* duty was specifically crafted with an eye toward "smoking and health."

*Cipollone v. Liggett Grp.*, 505 U.S. 504, 552-53 (1992).  As in the cases cited above, this case is not based on smoking and health.  Accordingly, the FLCAA has no bearing on the adjudication of the City's claims.

> b.  *The TCA Does Not Preempt the City's Failure to Warn Claims Because They Do Not Demand that Defendants Alter Their Labeling.*

Defendants' contention that the City's failure to warn claims challenge the sufficiency of the federally mandated, exclusive warning statements required for cigarette labeling is without merit.  Opp. at 10.  The City's failure to warn counts do not mention "labels" at all.  Compl. ¶ 145-170 (Counts X and XI).  The allegations are simple and straightforward.  The City does not seek that the Defendants change their labeling in any way at this point.  Simply put, it's too late.  The litter is on the City's land, ground, streets, and in its waterways.   Accordingly, the TCA is irrelevant to the City's claims.

Yet, in an attempt to create a "strawman", the Defendants selected a statement the City added in its factual background as evidence that the City is currently attempting to regulate their labeling.  Opp. at 12 (quoting Compl. ¶ 34). This statement of fact, however, merely established a historical context for the tobacco industry's unabated history of lobbying against government regulation of all types.  It does not modify in any way the City's request for relief of money damages, fines, and the costs of abatement, not one of which includes relief that the Defendants change their labeling.

6

The Complaint notes that historically "Defendants . . . <u>were required</u> to issue adequate warnings to Baltimore City . . . of the reasonably foreseeable or knowable severe risks posed by the inevitable use and litter of their filtered cigarettes, defective and dangerous products when used as intended or in a foreseeable manner" and that "Defendants <u>were required</u> to warn of and instruct the Plaintiff about these dangers but failed to do so." Compl. ¶ 147, 149, 160 (Emphasis added). The City seeks to hold Defendants accountable for failing to inform it of the environmental dangers of nonbiodegradable cigarette filters in the 1970s. The City does not prescribe how Defendants should have remedied this warning failure. Courts, of course, do not dictate that warnings must only occur through labeling. *See, e.g.,* C*hem. Specialties Mfrs. Ass'n v. Allenby,* 958 F.2d 941, 943 (9th Cir. 1992) (holding that point-of-sale warnings did not constitute labels). As such, the City's claims for failure to warn do not "necessarily raise" labeling as a substantial federal issue at this time. The Complaint only relates to the Defendants' failure to give notice to the City that their litter was non-biodegradable.

Defendants also claim that, "[I]n any event, federal labeling and advertising requirements dictate the warnings that Defendants must include in all marketing materials, including on their packaging, in their advertising, and at the point of sale" to argue that Defendants' failure to warn claims challenge these requirements. Opp. at 12. In support of this assertion, Defendants cite 15 U.S.C. § 1333 and 21 C.F.R. §§ 1140.30–34. *Id.* Yet, not one of these statutes imply that these requirements are exclusive, i.e., nor do they forbid that cigarette manufacturers from notifying property owners that their cigarette butts will litter the City's streets or that the City will have to clean it up. Moreover, the labels only control the way in which the Defendants must "warn" consumers about smoking and human health, not littering. The four statutes Defendants cite are addressed in full below.

7

15 U.S.C. § 1333 requires (a) that cigarette packaging must be labeled with one of a number of available health warnings with conspicuous placement and typography, (b) that advertising have similar labeling, and (c) that these warnings appear on marketing materials in accordance with other specific requirements.  It does not concern any labeling, advertising, or marketing content aside from these warnings.  Nor does it limit content to just these warnings.

21 C.F.R. § 1140.30 permits manufacturers, advertisers, and distributors to "disseminate advertising or labeling which bears a cigarette or smokeless tobacco brand name" in certain locations.  The City's Complaint does not address these issues at all.

*Id.* § Section 1140.32 provides graphic design limitations and does not speak to the content of any marketing or labeling. Again, the City's Complaint has nothing to do with these requirements.

Lastly, *Id.* § Section 1140.34 provides specific limits on (a) the distribution and marketing of items and services with product identification associated with brands of cigarettes and smokeless tobacco by manufacturers and distributors of imported cigarettes, (b) the offering of gifts to people purchasing cigarettes, and (c) the sponsoring of "any athletic, musical, artistic, or other social or cultural event, or any entry or team in any event" to advertise cigarettes.  Again, the City's claim has no relationship to the regulation whatsoever.

Obviously, not one of these requirements recited above has anything to do with this prior notice that the City claims pursuant Maryland law concerning the discarded filters that litter its streets and waterways.  Defendants' assertion that the City's state-law claims cannot be adjudicated without disturbing these niche regulations is both legally and factually incorrect.  All of the City's claims can be adjudicated under state common law, state statutory law, and City Code without disturbing a single cigarette label, warning, package, or advertisement.

   c. *The TCA Does Not Preempt the City's Defective Design Claims Because They Do Not Demand that Defendants Alter Cigarette Designs.*

Contrary to Defendants' contentions, the City's requested relief does not invoke interpretation of FDA standards because the City does not seek that the FDA alter Defendants' marketing authorizations or that the Defendants alter the design. Opp. at 13, 13, 14, 21. Nowhere in the City's Complaint is there such a claim for relief. Defendants further claim that they cannot legally manufacture or distribute biodegradable cigarette filters. Opp. at 14-15. But they concede in footnote 3 that it is entirely legal for them to redesign their products; the TCA's regulations would simply inconvenience them if they chose to do so. Opp. n.3.

The City seeks abatement of the cigarette filter littering, not the removal of cigarette filters or the alteration of the design of their cigarettes. Baltimore spends resources on abatement that include posting signs indicating fines for littering, increasing of public awareness through billboards and radio/television broadcasting, and law enforcement time, energy, and manpower to fine for littering. Compl. ¶ 43. Thus, the City has already set up operations to reduce littering of cigarettes within the City. The City is not asking the Defendants to alter their products; merely to pay for the clean-up necessitated by its products.

Ultimately, the Supreme Court has held, and Defendant R.J. Reynolds has conceded, that federal law does not preempt most cigarette defective design claims, much less necessarily require any intervention of federal law. *Cipollone*, 505 U.S. at 523 ("[The FCLAA] does not generally pre-empt 'state-law obligations . . . to use a demonstrably safer alternative design for cigarettes.'"); *R.J. Reynolds Tobacco Co.*, 214 So. 3d at 601 ("Reynolds concedes that federal law does not preempt all product liability claims against cigarette manufacturers, such as those based on a theory of defect narrower than the inherent dangerousness of all cigarettes."). Defendants lack any basis

for their assertion that the City seeks to alter federally imposed tobacco product standards when they cannot name a single federal standard that conflicts with the City's claims.

> d. *The TCA and the FDA's Environmental Impact Assessments Do Not Preempt the City's Nuisance Claims.*

Like a broken record, Defendants also attempt to paint the City's nuisance claim as a challenge to federal regulatory standards. Opp. at 15. Defendants imply that the City's nuisance claim challenges the FDA's decision to permit the sale of cigarettes in light of the FDA's assessment of their environmental impact. *Id.* ("Congress expressly recognized the hazards of cigarettes yet intended 'to continue to permit the sale of tobacco products to adults.").  But the TCA explicitly preserves the power of the states to "prohibit the sale, distribution, possession, exposure to, access to, advertising and promotion of, or use of tobacco products by individuals of any age . . . . " 21 U.S.C. § 387p(a)(1).  Further, the TCA explicitly provides that it does not preempt local regulation of cigarette sales. *Id.*  Consequently, courts have consistently upheld the "traditional police powers of the states to regulate cigarette sales and impose tort liability on cigarette manufacturers," *Major*, 14 Cal. App. 5th at 1192 (quoting *R.J. Reynolds Tobacco Co. v. Marotta*, 214 So. 3d 590, 600 (Fla. 2017)).

Last month, the Supreme Court denied certiorari for a case in which the defendants raised the same arguments as Defendants here. In rejecting the argument that the "unreasonable interference" element of nuisance requires assessing federal regulations, the Fourth Circuit held:

> Circumstances showing an "unreasonable interference" may include: (1) "[w]hether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience"; (2) "whether the conduct is proscribed by a statute, ordinance or administrative regulation"; or (3) "whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right." Claimants can point to any or all of those three circumstances when attempting to prove the "unreasonable-interference" element of a public nuisance. They can avoid federal law entirely, for

> example, if they show harmful conduct either involving a "significant interference"
> with the public's safety or producing a "permanent or long-lasting effect." Neither
> of those avenues require federal law as a "necessary element."

*Mayor & City Council of Balt. v. BP P.L.C.,* 31 F.4th 178, 211 (4th Cir. 2022), *cert. denied*, *BP p.l.c. v. Mayor of Balt.*, No. 22-361, 2023 U.S. LEXIS 1773 (Apr. 24, 2023) (quoting *Tadjer v. Montgomery Cnty.*, 300 Md. 539, 479 A.2d 1321, 1327 (1984)).  Like the district court in the *B.P.* case, this Court should grant the City's motion to remand this matter to state court.

Defendants cite no authority suggesting that localities must rely on federal assessments of environmental impact and reach the same conclusion as the federal agency.  Such a requirement would pose significant federalism concerns and contravene Congress's intent in saving the state's power to impose its own more stringent regulations. 21 U.S.C. § 387p(a)(2)(B).  Defendants cannot cite any favorable authority, so they have resorted to challenging the validity of the claim rather than addressing whether it necessarily raises a federal issue.  *See* Opp. at n.4.  In short, not one of the City's claims turns on an "actual disputed and substantial issue of federal law."  *Gunn*, 568 U.S. at 258. Rather, each turns on "questions of pure state law, including traditional tort law, questions of duty, breach, causation, and damages." *W. Virginia State Univ. Bd. of Governors v. Dow Chem. Co.,* 23 F.4th 288, 312 (4th Cir. 2022).

Fundamentally, the Fourth Circuit has conclusively held that "§ 1331 [does] not confer federal question jurisdiction over state tort and products liability claims." *Burrell*, 918 F.3d at 381. Defendants' conclusory assertion that the City's claims amount to a "collateral attack" on the FDA's regulatory powers is unsubstantiated by law.  Opp. at 17-18.  The menagerie of cases that Defendants cite to suggest otherwise are easily distinguishable as *direct* challenges to the decision of a federal agency.  The City addresses each below.

In *Bader Farms, Inc. v. Monsanto Co.*, the plaintiffs alleged that the defendant's concealment of information resulted in an agency's decision to deregulate new seeds; the court held that "[plaintiffs] can only succeed on that [fraudulent concealment] count if they establish that the agency decision [to deregulate new seeds] was incorrect due to defendant's fraudulent concealment. *Bader Farms, Inc. v. Monsanto Co.*, 2017 U.S. Dist. LEXIS 21925, at *8 (2017). None of the City's claims alleges or implies that any FDA decision is incorrect.

In *Bd. Of Comm'rs of Se. La. Flood Prot. Auth.- E. v. Tenn. Gas Pipeline Co., L.L.C.*, the Fifth Circuit held that plaintiff's complaint drew on federal law as the "exclusive basis for holding the Defendants liable." *Bd. Of Comm'rs of Se. La. Flood Prot. Auth.- E. v. Tenn. Gas Pipeline Co., L.L.C.*, 850 F.3d 714, 722 (5th Cir. 2017). Further, the court found that plaintiff's claims challenged an agency's decision to issue federal permits. *Id.* at 724. In contrast, the City relies on only state law and does not challenge any federal permit.

In *Pet Quarters, Inc. v. Depository Tr. & Clearing Corp.*, the plaintiff directly challenged the existence of a federal  program. *Pet Quarters, Inc. v. Depository Tr. & Clearing Corp.*, 559 F.3d 772, 781 (8th Cir. 2009). As established above, the City does not challenge the FDA's decision to permit the sale of cigarettes, particularly since the TCA explicitly permits localities to ban sales altogether. 21 U.S.C. § 387p(a)(2)(B); *R.J. Reynolds Tobacco Co.*, 60 F.4th 1170; *Philip Morris USA, Inc.*, 198 So. 3d at 979.

In *McKay v. City and Cnty. of San Francisco*, the court rejected plaintiffs' request to enjoin the use of certain flight paths because  the FAA "has exclusive sovereignty of airspace of the United States." *McKay v. City & Cnty. of S.F., No*. 16-cv-03561 NC, 2016 U.S. Dist. LEXIS 178436, at *13 (N.D. Cal. Dec. 23, 2016) (quoting 49 U.S.C. § 40103(a)) (internal quotations omitted). By contrast, Congress never granted the FDA exclusive control over the tobacco

industry, as evidenced by the TCA's preservation and savings clauses. 21 U.S.C. § 387p(a)(1); 21

U.S.C. § 387p(a)(2)(B), *Stein*, 423 F. Supp. 3d at 169 ("The preemption provision is limited to

certain subject areas that do not include marketing . . . and it is followed by a saving provision

establishing exceptions *even in those areas*."). The New York Southern District Court explicitly

defined the effect of these clauses:

> "By explicitly "preserving" and "saving" the right of state and local governments
> to regulate the sale and distribution more (but not less) restrictively than the FDA
> might, Congress expressed a clear and unmistakable preference for limiting the
> federal government's role to setting a floor below which no local sales regulations
> could go, while remaining sensitive to differing sensibilities about the use of
> tobacco products in different parts of the country."

*U.S. Smokeless Tobacco Mfg. Co.*, 703 F. Supp. 2d at 344-45.

Ultimately, the argument that the City's claims arise under federal law simply because the

FDA has established unrelated regulations fails as a matter of law.  As the Fourth Circuit concluded

when addressing the same arguments, "Defendants never identify what federal question is a

'necessary element' for any of Baltimore's state-law claims . . . and none of them invoke federal

law as a necessary requirement for imposing liability upon Defendants.  Thus, Defendants' liability

does not turn or 'hinge' upon interpreting federal law." *Mayor of Balt.*, 31 F.4th at 210, *cert.*

*denied*, *BP p.l.c.*, No. 22-361, 2023 U.S. LEXIS 1773.

### 2.   Defendants Failed to Show That the Complaint Raises Questions of Federal Law That Are "Substantial" to the Federal System as a Whole.

Defendants contend that the "substantial" and "disputed" federal issue is the

government's authority to set standards. Opp. at 17. But as established above, the City does not

dispute federal regulatory standards simply by exercising its police powers.  The TCA explicitly

provides evidence of careful Congressional intent maintain these powers to impose tort liability

on the tobacco industry. *Major*, 14 Cal. App. 5th at 1192.  "It is not enough that the federal issue

be significant to the particular parties in the immediate suit . . . The substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260.

An issue is substantial when it is a pure question of law, when its resolution would control many other federal cases, or when the government has a strong interest in litigating in a federal forum. *Empire HealthChoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700-01, 126 S. Ct. 2121, 165 L. Ed. 2d 131 (2006); *Grable & Sons Metal Prods., 54*5 U.S. at 315-16, 125 S. Ct. 2363. Defendants fail to specify which of these circumstances is present. This case does not directly raise a pure question of federal law. The actual issues that a jury will decide—Defendants' liability for the manufacture, promotion, sale, and distribution of cigarettes with nonbiodegradable filters—is heavily fact dependent. Second, the judgment in this case will not control many other federal cases; it will control only Defendants. Finally, the federal government has no strong interest in litigating this matter in federal court. It is fundamentally a tort liability dispute of the type that is ordinarily heard in state courts. Despite Defendants' assertions otherwise, the City's claims do not challenge federal regulatory standards, directly or indirectly.

### 3. Resolution in a Federal Court Would Disrupt the Congressionally Approved Federal-State Balance.

Courts construe removal jurisdiction strictly because it raises significant federalism concerns. *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994) (citation omitted). "If federal jurisdiction is doubtful, a remand is necessary." *Id.* A case disrupts the federal-state balance if exercising jurisdiction would "herald[ ] a potentially enormous shift of traditionally state cases into federal courts." *Grable & Sons Metal Prods., 54*5 U.S. at 319, 125 S. Ct. 2363.

Negligence actions and actions to enforce local ordinances are traditionally heard in state courts. Allowing every such tort action against the tobacco industry to be brought in federal court would shift traditionally state cases into federal courts. There is no reason to suppose that Congress meant to bar tort liability cases from state courts., particularly where courts have held the opposite—that Congress intended to preserve state's ability to pursue these matters:

> Because the TCA is ambiguous and implicates traditional state police powers, we must accept the reading of the Savings Clause that disfavors preemption. *See Altria Grp.*, 555 U.S. at 77. . . . the City's reading [of the Savings Clause as an exception to the Preemption Clause] best limits preemption and preserves traditional state authority. Absent clearer intent from Congress, we must accept the City's interpretation.

*R.J. Reynolds Tobacco Co.*, 60 F.4th 1170.

Even when a tort liability case implicates a federal interest, this interest is "not significant enough to allow the disruption of the federal-*state balance by having a federal court decide such actions. Comer v. McCaskill*, No. 1:21cv962, 2022 U.S. Dist. LEXIS 137554, at *15 (M.D.N.C. Aug. 2, 2022) (citing *Pressl v. Appalachian Power Co.*, 842 F.3d 299, 305 (4th Cir. 2016)) ("State courts are just as able (perhaps more able) to interpret and enforce the property rights conveyed through instruments governed by state law."). *Burrell* is dispositive on this point. The Fourth Circuit refused to exercise federal question jurisdiction because the federal issue arose in a state-law products liability suit. *Burrell*, 918 F.3d at 386-88. The panel held that *Gunn* requires the party asserting jurisdiction to prove that federal courts could hear not only the particular case, but also the "multitude of cases just like it" without disturbing the "congressionally approved balance" of judicial responsibilities. *Id.* at 386. Because the plaintiffs' case was a "garden variety state tort" suit that "risk[ed] enormous disruption to the division of judicial labor" by shifting a "tremendous number of cases" from state to federal court, the court found that the claims could not satisfy *Gunn*'s fourth element. *Id.* at 387 (quoting *Grable & Sons Metal Prods.,* 545 U.S. at

15

318, 125 S. Ct. 2363).

Requiring the City's tort claims here to be heard in federal court would cause "innumerable claims traditionally heard in state court" to be "funneled [into] federal court instead." *Burrell*, 918 F.3d at 380.  Defendants provide no evidence or reasoning why this case is an outlier that would cause "only a microscopic effect on the federal-state division of labor." *Grable & Sons Metal Prods., 54*5 U.S. at 315, 125 S. Ct. 2363.  Rather, they focus solely on the supposed substantiality of the City's alleged challenge to a federal regulatory regime.  As such, Defendants "ignore[] rather than aid[] the 'sensitive judgments' of 'practicality and necessity' that precedent demands." *Dagostine v. Pendleton*, No. 2:22-cv-00220, 2022 U.S. Dist. LEXIS 207079, at *18 (S.D.W. Va. Nov. 15, 2022) (quoting *Merrell Dow Pharms., Inc.*, 478 U.S. at 810, 92 L. Ed. 2d 650, 106 S. Ct. 3229).  Accordingly, "this case cannot be squeezed into the slim category *Grable* exemplifies." *Empire HealthChoice Assur., Inc.*, 547 U.S. at 701, 126 S. Ct. at 2137, 165 L. Ed. 2d 131.

### B.    The Tobacco Control Act Does Not Completely Preempt the City's Claims.

Courts are reluctant to find complete preemption because it "undermines the plaintiff's traditional ability to plead under the law of his choosing." *Lontz v. Tharp*, 413 F.3d 435, 441 (4th Cir. 2005).  Complete preemption applies rarely and only to a small category of statutes whose subject matter has been completely subsumed by federal law. *Id.* at 438. Courts turn to Congressional intent to assess whether federal law completely preempts state law. *Johnson v. Am. Towers, L.L.C.*, 781 F.3d 693, 702 (4th Cir. 2015) (quoting *Metro. Life Ins. Co.*, 481 U.S. at 66) ("Complete preemption applies only when 'Congress has clearly manifested an intent to make causes action . . . removable to federal court.'").  The congressional intent to displace state law "must be clear in the text of the statute." *Lontz*, 413 F.3d at 441. Thus, there is a rebuttable

presumption against finding the complete preemption of state-law claims that can only be overcome if the removing party satisfies its "significant burden" of "establish[ing] [a] congressional intent to extinguish similar state claims by making the federal cause of action exclusive." *Id.* at 441.

The two circumstances which warrant complete preemption include where "(1) the preempting statute displays a clear congressional intent to 'entirely displace' state law; and (2) the preempting statute creates an exclusive federal cause of action in an area of 'overwhelming national interest.'" *Mayor of Balt.*, 31 F.4th at 199 (quoting *Skidmore v. Norfolk S. Ry. Co.*, 1 F.4th 206, 212 (4th Cir. 2021)).  Defendants argue that the latter applies to the TCA, but their argument hinges on a misinterpretation of the TCA's preemption provisions.  The TCA's savings clause demonstrates keen consideration toward the traditional role of the state in regulating the sale of tobacco products.

As Defendants state, the preemption clause of the TCA preempts the states' power to "establish or continue in effect with respect to a tobacco product any requirement which is different from, or in addition to, any requirement under the provisions of this chapter . . . relating to tobacco product standards, premarket review, adulteration, misbranding, labeling, registration, good manufacturing standards, or modified risk tobacco products." 21 U.S.C. § 387p(a)(2)(A). Nonetheless, the next provision is the savings clause, which provides a clear exception to the preemption clause: "Subparagraph (A) does not apply to requirements *relating to the sale, distribution,* possession, information reporting to the State, exposure to, access to, the *advertising and promotion of*, or use of, *tobacco products* by individuals of any age, or relating to fire safety standards for tobacco products." 21 U.S.C. § 387p(a)(2)(B) (emphasis added).  Ignoring this clause changes TCA's preemption standard.  Yet courts have held, over and over, that the savings

and preservation clauses, read together, evidence no Congressional intent to completely preempt

state regulation of the tobacco industry, much less state litigation.  In explaining what it calls the

TCA's "preservation sandwich," the Ninth Circuit held:

> [T]he TCA's text sandwiches *limited* production and marketing categories of
> preemption between clauses broadly preserving and saving local authority,
> including any "requirements relating to the sale" of tobacco products. This unique
> "preservation sandwich" enveloping the TCA's preemption clause reveals a careful
> balance of power between federal authority and state, local, and tribal authority,
> whereby Congress has allowed the federal government to set the standards
> regarding how a product would be manufactured and marketed, but *has left states,
> localities, and tribal entities the ability to restrict or opt out of that market
> altogether.*

*R.J. Reynolds Tobacco Co.*, 29 F.4th at 555 (emphasis added).

Further clarifying how the savings clause impacts the preemption clause, the Supreme

Court of New York determined that TCA permits states to impose broader regulations than those

set by the FDA: "Congress has designed a comprehensive scheme that carefully maps out areas

for states and federal agencies to regulate separately…For the areas regulated by federal law, the

TCA also allows states to impose requirements that do not deviate from federal standards." *JUUL

Labs, Inc.*, 2022 NY Slip Op 32121(U), ¶ 12.  Because FDA standards are intended to act as a

floor, state and local authority can proceed well beyond the areas regulated by federal law. *R.J.

Reynolds Tobacco Co. v. Cnty. of L.A.*, 29 F.4th 542, 553 (9th Cir. 2022) ("While under the TCA

the federal government sets the regulatory floor, the plain text of the preservation clause allows

state, local, and tribal governments to go beyond that"); *U.S. Smokeless Tobacco Mfg. Co., L.L.C.

v. City of N.Y.*, 2011 U.S. Dist. LEXIS 133018, at *4 (S.D.N.Y. Nov. 15, 2011) ("with respect to

regulations relating to, or even prohibiting sales of tobacco products, local governments are free

to go above any federal floor set either by the FSPTCA or by the FDA acting pursuant to it."); *U.S.

Smokeless Tobacco Mfg. Co.*, 703 F. Supp. 2d at 344-45 ("Congress expressed a clear and

unmistakable preference for limiting the federal government's role to setting a floor below which no local sales regulations could go, while remaining sensitive to differing sensibilities about the use of tobacco products in different parts of the country." (emphasis added)).  As summarized by a twice-cited case from the Fourth Circuit: "The preemption provision is limited to certain subject areas that do not include marketing, 21 U.S.C. § 387p(a)(2)(A), and it is followed by a saving provision establishing exceptions *even in those areas*." *Stein*, 423 F. Supp. 3d at 169 (emphasis added).

Defendants cite *Rosciszewski v. Arete Assocs., Inc.*, which makes no statement on the Congressional intent behind the TCA.  Opp. at 21.  There, the court held that the Copyright Act preempted the plaintiff's claims because "Congress has stated, "The declaration . . . in section 301 is intended to be stated in the clearest and most unequivocal language possible, so as to foreclose any conceivable misinterpretation of its *unqualified intention* that Congress shall act preemptively." *Rosciszewski v. Arete Assocs.*, 1 F.3d 225, 232 (4th Cir. 1993) (quoting *H.R. Rep. No. 1476, 94th Cong., 2d Sess.* 130 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5746) (emphasis added).  Congress has made no similar statement on its intent for the TCA to completely preempt state law.  The remainder of the cases Defendants cite concern federal statutes that do not preserve the powers of the states and are thus inapplicable.

## II.    CONCLUSION

The City's Complaint seeks relief exclusively under state law, and not one of Defendants' federal defenses supports removal jurisdiction.  For the reasons explained above, and for those to be advanced at any oral argument, the City's Complaint does not present subject matter jurisdiction over these state-law claims.  This Court should remand this action to the Circuit Court of Maryland for Baltimore City.

Dated: May 10, 2023                          Respectfully submitted,


                                             /s/*Roy L. Mason*
                                             Roy L. Mason (00922)
                                             Zachary Howerton (20688)
                                             **Smouse & Mason, LLC**
                                             223 Duke of Gloucester Street
                                             Annapolis, Maryland 21401
                                             T: (410) 269-6620
                                             F: (410) 269-1235
                                             rlm@smouseandmason.com
                                             zeh@smouseandmason.com

                                             Ebony Thompson, City Solicitor
                                             Sara Gross, Chief Solicitor
                                             Jane Lewis, Assistant Solicitor
                                             **Baltimore City Department of Law**
                                             100 N. Holliday Street
                                             Baltimore, Maryland 21202
                                             T: (410) 396-3947
                                             sara.gross@baltimorecity.gov

                                             Marc Grossman, Esq.
                                             (Pro Hace Vice Forthcoming)
                                             Melissa Sims, Esq.
                                             (Pro Hace Vice Forthcoming)
                                             **Milberg Coleman Bryson Phillips Grossman LLP**
                                             100 Garden City Plaza, Suite 500
                                             Garden City, NY 11530
                                             T: (866) 252-0878
                                             mgrossman@milberg.com
                                             msims@milberg.com

                                             Andrew A. Lemmon, Esq.
                                             (Pro Hace Vice Forthcoming)
                                             **Milberg Coleman Bryson Phillips Grossman LLP**
                                             PO Box 904
                                             Hahnville, Louisiana 70057
                                             T: (985) 783-6789
                                             alemmon@milberg.com

                                             *Attorneys for Plaintiff the Mayor and City Council of Baltimore*

20

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on May 10, 2023 the foregoing document was electronically filed with the Clerk of Court and will be served by operation of the Court's CM/ECF system upon all registered parties.

*/s/ Roy L. Mason*