IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **MAYOR AND CITY COUNCIL OF BALTIMORE,**<br><br>*Plaintiff*,<br><br>v.<br><br>**PHILIP MORRIS USA, INC.**, *et al.*,<br><br>*Defendants*. | **Civil No. 1:23-cv-00303-JRR** |

**MEMORANDUM OPINION**

This matter comes before the court on Plaintiff Mayor and City Council of Baltimore's ("Plaintiff" or "MCCB") Motion to Remand (ECF No. 37; the "Motion") and Defendant Philip Morris USA, Inc.'s[1] ("Philip Morris") opposition to same. (ECF No. 38). The court has reviewed the parties' submissions. No hearing is necessary. Local Rule 105.6 (D. Md. 2023).

**I.   BACKGROUND**

In this action, MCCB seeks damages, equitable relief, criminal fine penalties, and attorneys' fees and suit costs related to the fiscal and environmental costs and effects associated with littered cigarette filters in Baltimore City. (ECF No. 2, the "Complaint.") Defendants manufacture, distribute, and sell virtually all cigarettes purchased in the United States, including Baltimore City. *Id.* ¶ 9. Plaintiff alleges that, contrary to popular belief that cigarette filters are made of biodegradable cotton, most cigarette filters are made of a substance called cellulose

---

[1] Plaintiff also filed its Complaint against Defendants Altria Group, Inc., R.J. Reynolds Tobacco Company, British American Tobacco P.L.C., Liggett Group LLC, and The George J. Falter Company. Defendant Philip Morris is the only Defendant that filed the Notice of Removal (ECF No. 1) and responded to MCCB's Motion; all Defendants consent to removal. (ECF No. 1 ¶ 28.)

acetate, which is non-biodegradable and toxic to plants and animals. *Id.* ¶ 2. Plaintiff claims that when cigarette filters are littered on Baltimore City streets, sidewalks, beaches, parks and lawns, the filters leech harmful pollutants into the water and soil. *Id.* ¶ 3. MCCB alleges that, despite Defendants' knowledge that their filters do not break down, they elected to manufacture and sell cellulose acetate filter cigarettes to make more money, as smokers prefer the "drag" of cellulose acetate filters and because they cost less for Defendants to bring to market. *Id.* ¶ 10.

Plaintiff initially filed its Complaint in the Circuit Court for Baltimore City, Maryland. The Complaint sets forth eleven counts: Violation of the Maryland Illegal Dumping and Litter Control Law (Count I); Violation of Baltimore City Code §§ 7-606 and 7-607 (Count II); Violation of Baltimore City Code § 7-608 (Count III); Violation of Baltimore City Code § 7-609 (Count IV); Violation of Baltimore City Code § 7-702 (Count V); Continuing Trespass (Count VI); Strict Liability for Design Defect (Count VII) Negligent Design Defect (Count VIII); Public Nuisance (Count IX); Strict Liability Failure to Warn (Count X); and Negligent Failure to Warn (Count XI). In its prayer for relief, Plaintiff seeks compensatory damages; equitable relief, including investigation, abatement, remediation, and removal of the alleged nuisances; criminal penalties and fines; punitive damages; disgorgement of profits; attorneys' fees and suit costs; and injunctive relief in the form of a court order mandating immediate and complete abatement and remediation of Baltimore City property damages by cigarette filter litter. (ECF No. 2 at 46-47.)

Defendant Philip Morris removed the case to this court pursuant to 28 U.S.C §§ 1331, 1367 1441, and 1446. (Notice of Removal, ECF No. 1 at 1.) Philip Morris asserts that this court has federal question and supplemental jurisdiction over this action under 28 U.S.C. §§ 1331 and 1367. Although the Complaint only raises state law causes of action, Philip Morris argues removal is authorized under § 1331, because the Complaint raises disputed and substantial federal questions,

and the claims are completely preempted by federal statutes and regulations. (ECF No. 1, ¶¶ 16-18.)

According to Philip Morris, Plaintiff's claims concern the design, labeling and marketing of cigarettes, which are comprehensively regulated by federal statute. *Id.* ¶ 1. Philip Morris' position that this court has original federal question jurisdiction rests on three federal statutes: (1) the Federal Cigarette Labeling and Advertising Act ("FCLAA") 15 U.S.C §§ 1331, *et seq.*; the Family Smoking Prevention and Tobacco Control Act of 2009 ("TCA") 111 P.L. 31, 123 Stat. 1776; and the National Environmental Policy Act ("NEPA") 42 U.S.C. §§ 4321, *et seq*. (ECF No. 1, ¶¶ 2-9.)

Congress enacted the FCLAA to "to establish a comprehensive Federal program to deal with cigarette labeling and advertising with respect to any relationship between smoking and health." FCLAA § 1331. The TCA authorizes the Food and Drug Administration ("FDA") to regulate the "manufacture, marketing, and distribution of tobacco products." TCA § 3(1). FDA regulations including those governing tobacco, "to the fullest extent possible," are to be "interpreted and administered in accordance with the policies set forth in [the NEPA]." 42 U.S.C. § 4332.

Plaintiff now moves this court to remand the case back to state court on the basis that this court lacks subject matter jurisdiction to support removal. (ECF No. 37-1 at 2.) Specifically, Plaintiff challenges Philip Morris' argument that Plaintiff's state law claims merely disguise the fact that the Complaint necessarily implicates comprehensive federal regulatory schemes. *Id.* at 5-6.

II.  **LEGAL STANDARD**

Federal courts are courts of limited jurisdiction and "may not exercise jurisdiction absent a statutory basis." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). "A court is to presume, therefore, that a case lies outside its limited jurisdiction unless and until jurisdiction has been shown to be proper." *United States v. Poole*, 531 F.3d 263, 274 (4th Cir. 2008) (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)). Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction" may be "removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

Courts are required to strictly construe removal jurisdiction. *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-109 (1941)). On a motion to remand, the burden of demonstrating the propriety of removal rests with the removing party. *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 815 (4th Cir. 2004). "If a plaintiff files suit in state court and the defendant seeks to adjudicate the matter in federal court through removal, it is the defendant who carries the burden of alleging in his notice of removal and, if challenged, demonstrating the court's jurisdiction over the matter." *Strawn v. AT & T Mobility LLC*, 530 F.3d 293, 296 (4th Cir. 2008). If "a case was not properly removed, because it was not within the original jurisdiction" of the federal court, then "the district court must remand [the case] to the state court from which it was removed." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 8 (1983) (citing 28 U.S.C. § 1447(c)).

4

### III.  ANALYSIS

#### A.  Federal Question Jurisdiction – The Well-Pleaded Complaint Rule and Substantial Federal Question Doctrine.

District courts have federal question jurisdiction over civil actions that arise under the Constitution, laws, and treaties of the United States. 28 U.S.C. § 1331. The "propriety" of removal on the basis of federal question jurisdiction "depends on whether the claims 'aris[e] under' federal law." *Pinney v. Nokia, Inc.,* 402 F.3d 430, 441 (4th Cir. 2005) (citations omitted). Importantly, "[t]he burden of demonstrating jurisdiction resides with 'the party seeking removal.'" *Dixon v. Coburg Dairy, Inc.,* 369 F.3d 811, 816 (4th Cir. 2004) (quoting *Mulcahey v. Columbia Organic Chems. Co.,* 29 F.3d 148, 151 (4th Cir. 1994)). "[The court is] obliged to construe removal jurisdiction strictly because of the 'significant federalism concerns' implicated." *Id.* "Therefore, '[i]f federal jurisdiction is doubtful, a remand [to state court] is necessary.'" *Id.*

Although MCCB brings only state law causes of action, Philip Morris argues that removal is proper because the claims raise substantial federal questions regarding the regulation of cigarette manufacturing, packaging, marketing, and labeling. (ECF No. 1, ¶¶ 17, 19; ECF No. 38 at 1.) In determining whether MCCB's claims arise under federal law, this court begins with the "well-pleaded complaint" rule, which "ordinarily" directs courts "to look no farther than the plaintiff's complaint in determining whether a lawsuit raises issues of federal law capable of creating federal-question jurisdiction under 28 U.S.C. § 1331 . . . . [The rule] enforces the principle that the plaintiff is the master of his complaint and generally permits plaintiffs to 'avoid federal jurisdiction by exclusive reliance on state law.'" *Pinney,* 402 F.3d at 442 (quoting *Custer v. Sweeney,* 89 F.3d 1156, 1165 (4th Cir. 1996), and *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987)). If, however, "federal law creates a plaintiff's claim, then removal is proper." *Id.* (quoting *Mulcahey v. Columbia Organic Chems. Co.,* 29 F.3d 148, 151 (4th Cir. 1994)).

5

In examining the Complaint, therefore, the "first step is to 'discern whether federal or state law creates the cause of action." *Pinney,* 402 F.3d at 442.  Here, although it is undisputed that the Complaint expressly sets forth only state law claims, the court's inquiry does not end there.  "There is a 'slim category' of cases . . . in which state law supplies the cause of action but federal courts have jurisdiction under § 1331 because 'the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Mayor & City Council of Baltimore v. BP P.L.C.,* 31 F.4th 178, 208 (4th Cir. 2022) (quoting *Burrell v. Bayer Corp.*, 918 F.3d 372, 380 (4th Cir. 2019)).  Courts are cautioned in exercising jurisdiction on this basis, because it lies at the "outer reaches of § 1331." *Burrell,* 918 F.3d at 380 (quoting *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 810 (1986)).  For that reason, the "mere presence of a federal issue in a state cause of action does not automatically confer federal question jurisdiction." *Merrell Dow,* 478 U.S. at 813.

In *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, the Supreme Court established a four-prong test for determining whether state law claims sufficiently raise federal issues to support the existence of federal question jurisdiction.  545 U.S. 308, 314 (2005); *see, e.g., Mayor & City Council of Baltimore,* 31 F.4th at 209.  Federal-question jurisdiction exists over a state law claim if a federal issue is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013).  If a state law claim does not satisfy all four prongs of the test, federal question jurisdiction does not exist, and the case must be remanded. *See id.* (explaining that when all four requirements are met, federal question jurisdiction is proper); *see also Pinney,* 402 F.3d at 442 (explaining "[i]f the defendant fails to establish [any] of these

elements, the claim does not arise under federal law pursuant to the substantial federal question doctrine, and removal cannot be justified under this doctrine") (citing *Dixon*, 369 F.3d at 816).

Plaintiff asserts that Philip Morris fails to satisfy the substantial federal question test, because Philip Morris does not – and cannot – identify a specific federal law or issue that, by necessity, must be resolved to adjudicate the state law claims, and instead relies on broad, conclusory language to insist "in a generalized way" that Plaintiff's state law claims implicate federal regulatory schemes. (ECF No. 37-1 at 8-9.)

### 1. Necessarily Raised

Plaintiff brings eleven claims based on state statutory and common law, and the Baltimore City Code: Count I for violation of Maryland's Criminal Law Code; Counts II through V for violations of the Baltimore City Code; and Counts VI through XI for violations of Maryland common law. As best the court can discern, Philip Morris argues the court has federal question jurisdiction under the substantial federal question doctrine based on Plaintiff's claims for design defect, public nuisance, and failure to warn (Counts VII through XI).[2] The court, therefore, examines each of these claims in turn. *See Pinney*, 402 F.3d at 443 (examining each of plaintiffs' claims under the substantial federal question test in determining whether the court had federal question jurisdiction).

#### a. Strict Liability and Negligent Design Defect Claims (Counts VII and VIII)

Philip Morris asserts that the FDA, through the TCA and its enabling regulations, has the exclusive authority to set tobacco product standards and authorize the design, manufacture, and sale of Defendants' cigarettes. (ECF No. 38 at 14.) Philip Morris argues that Plaintiff's defective

---

[2] Philip Morris does not argue that the claims set forth in Counts I through VI provide a basis for the court's jurisdiction, but rather rests its removal of these claims on supplemental jurisdiction under 28 U.S.C. § 1367. (ECF No. 1 at 1.)

7

design claims raise a substantial federal question because adjudicating the design defect claims requires an assessment of the sufficiency of FDA and other national standards governing the authorization, design, and manufacture of cigarettes. *Id.*

Under Maryland law, the elements of a strict liability design defect claim are: "(1) the product was in a defective condition at the time that it left the possession or control of the seller, (2) that it was unreasonably dangerous to the user or consumer, (3) that the defect was a cause of the injuries, and (4) that the product was expected to and did reach the consumer without substantial change in its condition." *Phipps v. General Motors Corp.*, 278 Md. 337, 344 (1976); RESTATEMENT (SECOND) OF TORTS § 402A (1965). "In an action founded on strict liability in tort, as opposed to a traditional negligence action, the plaintiff need not prove any specific act of negligence on the part of the seller. The relevant inquiry in a strict liability action focuses not on the conduct of the manufacturer but rather on the product itself." *Id.* (citing Weinstein, Twerski, Piehler, Donaher, *Product Liability: An Interaction of Law and Technology*, 12 DUQUESNE L. REV. 425, 429 (1974)). In order to prevail in a strict liability defective design action, a plaintiff must prove that the product was "both in a 'defective condition' and 'unreasonably dangerous' at the time that it [was] placed on the market by the seller." *Id.*

Whether the claim is rooted in a theory of negligence or strict liability, a design defect plaintiff must establish "that the product was defective when it left the hands of the manufacturer, and that the defective condition was the proximate caused of the injuries or damages of which plaintiff complains." *Ford Motor Co. v. General Accident Ins. Co.*, 365 Md. 321, 335 (2001) (quoting Robert E. Powell & M. King Hill, Jr., *Proof of a Defect or Defectiveness*, 5 U. BALT. L. REV. 77 (1975)).

Philip Morris asserts that Plaintiff's defective design claims amount to a "locally imposed tobacco product standard that would impose requirements for the 'construction, components, ingredients, additives, constituents, . . . and properties' of cigarettes." (ECF No. 38 at 15.)  Philip Morris misconstrues Plaintiff's claims.  Plaintiff does not challenge Defendants' compliance with the TCA; does not invoke the TCA; does not challenge the adequacy of the TCA or demand additional TCA-like restrictions or conditions; nor does Plaintiff demand an injunction requiring Defendants use biodegradable filters in their cigarettes.  Plaintiff's defective design claims hinge on allegations that Defendants' cigarette filters, regardless of federal regulation compliance, are defective and unreasonably dangerous to the environment, and Defendants placed them in the market aware of their defective condition.  Resolution of these claims does not necessitate resolution of any federal question or issue.  Accordingly, Philip Morris fails to meet its burden under the first prong of the substantial federal question test.  *See Pinney,* 402 F.3d at 447 (finding that the plaintiffs' design defect claims did not raise a federal question because "even if Nokia's wireless telephones comply with the federal RF radiation standards, the Pinney plaintiffs could still establish the defective design element of [] their strict liability claim. Conversely, if Nokia's wireless telephones do not comply with the federal RF radiation standards, the Pinney plaintiffs would not automatically establish the defective design element.")

### b. Public Nuisance Claim (Count IX)

Philip Morris asserts that Plaintiff's public nuisance claims raises a federal issue because it requires evaluating whether the purported environmental harms caused by the cigarette filters outweigh their benefits to society. (ECF No. 38 at 15.)  In support of its position, Philip Morris argues that the TCA, FCLAA, and NEPA require the type of "cost-benefit" analysis that a state court would have to undertake to resolve Plaintiff's public nuisance claim.  *Id.* at 16.

Under Maryland law, a "public nuisance is an injury to the public at large or to all persons who come in contact with it[.]" *Adams v. Commissioners of Town of Trappe*, 204 Md. 165, 170, (1954). To recover under a public nuisance claim, a plaintiff must demonstrate "unreasonable interference with a right in common to the general public." *Tadjer v. Montgomery County*, 300 Md. 539, 552 (1984) (quoting RESTATEMENT (SECOND) OF TORTS § 821B(1)). A public nuisance may be enforced by a private cause of action when the plaintiff has "authority as a public official or public agency to represent the state or a political subdivision in the matter[.]" RESTATEMENT (SECOND) OF TORTS § 821C(2)(b).

As the court can best discern, Philip Morris maintains that resolution of Plaintiff's public nuisance claim requires balancing the harms and benefits of Defendants' use of non-biodegradable cigarette filters, which is reserved for the federal agencies tasked with implementing tobacco regulations. (*See* ECF No. 38 at 16.) Here, Philip Morris misapprehends the elements of a public nuisance claim. Public nuisance involves an unreasonable interference with the public's rights. Pursuant to the RESTATEMENT (SECOND) OF TORTS § 821B(2):

> (2) Circumstances that may sustain a holding that an interference with a public right is unreasonable include the following:
>
> (a) Whether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience, or
> (b) whether the conduct is proscribed by a statute, ordinance or administrative regulation, or
> (c) whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right.

The Fourth Circuit offers the following guidance:

> Claimants can point to any or all of those three circumstances when attempting to prove the "unreasonable-interference" element of a public nuisance. They can avoid federal law entirely, for example, if they show harmful conduct either involving a "significant

> interference" with the public's safety *or* producing a "permanent or long-lasting effect." Neither of those avenues require federal law as a "necessary element."
>
> It is true that the Second Restatement of Torts indicates that the "unreasonable-interference" question may be fulfilled by showing the conduct at issue is proscribed by "*a* statute, ordinance or administrative regulation." So claimants *may* invoke a federal law or regulation to show that there is an "unreasonable interference" with the public's rights. But that is discretionary and not a "necessary element." Without resorting to any federal law, Plaintiffs can also utilize a state law or regulation when showing an "unreasonable interference" with the public's rights. Maryland courts agree.

*Mayor & City Council of Baltimore v. BP P.L.C.,* 31 F.4th 178, 211 (4th Cir. 2022).

Here, Plaintiff's nuisance claim is based on Defendants' use of non-biodegradable cigarette filters. Plaintiff does not allege violation of any federal law or regulation to support its public nuisance claim, and none is invoked *sub silentio* or otherwise by necessity. Because Plaintiff can set about to prove its public nuisance claim absent any reference to federal law or issue, Philip Morris does not meet the first prong of the substantial federal question test. *Pinney*, 402 F.3d at 449; *see also Mayor & City Council of Baltimore,* 31 F.4th at 211 (holding that because "neither public nor private nuisances 'necessarily raise' federal law as a 'necessary element,' . . . federal agencies' balancing of the harms and benefits of fossil-fuel extraction is not 'necessary' for proving either claim.")

### c. Strict Liability and Negligent Failure to Warn Claims (Counts X and XI)

Under Maryland law, "[i]n a product liability claim for strict liability failure to warn, the plaintiff must prove that the defendant's product was unreasonably dangerous as a result of the defendant's failure to warn and that the plaintiff was injured as a proximate result of the failure to warn." *Mack Trucks, Inc. v. Coates*, No. 2709 Sept. Term 2016, 2018 WL 2175932 *20 (Md.

App. May 11, 2018). In order to recover under a negligent failure to warn claim, a plaintiff must prove the same elements required for a strict liability failure to warn claim, plus "proof of an additional element—that the defendant had a duty to warn of dangers known to it or dangers that, in the exercise of reasonable care, should have been known to it, and breached that duty." *Id.* (citing AM. LAW OF PROD. LIABILITY 3d § 32:25 ("generally, a manufacturer or seller of a product is negligent if it fails to warn of those dangers of which it knows or reasonably should know."))

Philip Morris argues that Plaintiff's failure to warn claims "necessarily raise" substantial federal questions because the claims essentially challenge the sufficiency of the federal regulations governing warning statements required for cigarette labeling and advertising. (ECF No. 38 at 10.) In support of its position, Philip Morris avers that the FCLAA controls all aspects of cigarette warning statements including the content, size, and format on cigarette packaging, labeling and promotional materials. *Id.* at 11. Philip Morris further asserts that both the FCLAA and TCA prohibit states and localities from imposing additional requirements, bans or restrictions on cigarette labeling, advertising, or promotion. (ECF No. 38 at 11-12.) Based on these statutes, Philip Morris argues that a federal question is necessarily raised because Plaintiff's failure to warn claims require a finding that federally mandated warning requirements are inadequate. *Id.* at 13.

Plaintiff counters that its failure to warn claims neither challenge federal labeling requirements (including their adequacy) nor seek relief as to Defendants' warnings regarding the environmental impact of their cigarette filters. (ECF No. 37-1 at 13.) Instead, Plaintiff asserts that its failure to warn claims allege only that Defendants knew of the dangers associated with their cigarette filters and failed to disclose them to Plaintiff. *Id.*

Specifically, Philip Morris asserts that Plaintiff's failure to warn claims premise liability on Defendants' failure to include environmental warnings in marketing materials, including the

messages on cigarette packages. (ECF No. 38.) Philip Morris misapprehends both the scope of Plaintiff's failure to warn claims (subjectively) and the required elements of same (objectively). Counts X and XI do not hinge or bear upon Defendants' compliance with federal labeling and promotion regulation; rather, in these claims, Plaintiff attacks Defendants' awareness that their cigarette filters were hazardous when they "left their control" and they failed to tell anybody about it — including Plaintiff. Nothing about Plaintiff's failure to warn claims require review of whether Defendants are in compliance with federal cigarette labeling law; and nothing about Plaintiff's failure to warn claims urge that Defendants' should have communicated a warning in any particular manner whatsoever. Accordingly, Philip Morris fails the first prong of the substantial federal question test. *Vlaming v. W. Point Sch. Bd.,* 10 F.4th 300, 306 (4th Cir. 2021). *See also Pinney,* 402 F.3d at 447 (holding that the plaintiffs' state law claims did not "contain a disputed question of federal law" noting that "[t]he thrust of the claims is that Nokia violated state law by manufacturing and selling a product that it knew or should have known, was dangerous and by not adequately warning of the dangers;" and explaining that "state law establishes a set of elements, without reference to federal law, that the plaintiffs must establish in order to make out 'valid claims for relief'") (quoting *Franchise Tax Bd.*, 463 U.S. at 13.)

    **2.**    **Elements 2 through 4 of the Substantial Federal Question Test**

  Because the court finds that Plaintiff's state law claims do not "necessarily raise" federal questions as required under the first prong of the substantial federal question test, the doctrine does not support federal question jurisdiction regardless of how the parties' fare on the remaining elements.

B.     **Complete Preemption**

Philip Morris' second argument that this court has federal question jurisdiction over Plaintiff's state law claims pursuant to the complete preemption doctrine also fails. (ECF No. 38 at 20). "When [a] federal statute completely pre-empts [a] state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Ben. Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003). Stated differently, complete preemption is a jurisdictional doctrine that "'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar Inc.*, 482 U.S. at 393 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). "To remove an action on the basis of complete preemption, a defendant must establish that the plaintiff has a 'discernible federal [claim]' and that 'Congress intended [the federal claim] to be the exclusive remedy for the alleged wrong.'" *Pinney*, 402 F.3d at 449 (quoting *King v. Marriott Int'l, Inc.*, 337 F.3d 421, 425 (4th Cir. 2003)).

Philip Morris asserts that Plaintiff's state law claims are completely preempted by the Administrative Procedure Act ("APA") and the TCA, because the APA and FDA regulations provide the "'exclusive cause of action' for presenting objections to the regulations governing the design and labeling of cigarettes, which are matter of 'overwhelming national interest." (ECF No. 38 at 20-21) (quoting *Lontz v. Tharp,* 413 F.3d 435, 441 (4th Cir. 2005)). On this basis, Philip Morris argues that "because Congress has established a clear and detailed procedure by which interested parties can push for stricter or different regulatory standards, Plaintiff's claims are completely preempted." (ECF No. 38 at 21.)

In undertaking a complete preemption analysis, the focus of this court's inquiry is congressional intent. *Lontz,* 413 F.3d at 441 (citations omitted). Congressional intent that

14

Plaintiff's state law claims be entirely displaced by the TCA and the APA must be clear from the text of the statutes. *Id.* Under the APA, "[e]ach agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule." 5 U.S.C. § 553(e). Pursuant to the TCA, "[t]he Secretary, . . . upon petition of an interested person, may by a regulation promulgated in accordance with the requirements of subsection (c) and paragraph (2), amend or revoke a tobacco product standard." 21 U.S.C.S. § 387g(d)(4)(A).

Here again, Philip Morris appears to misconstrue Plaintiff's claims. Plaintiff's claims do not seek to challenge, modify, or object to tobacco product standards regarding labeling, design, or marketing. Rather, Plaintiff claims challenge the product itself — namely the cigarette filters. Nothing in the text of the APA or TCA indicates congressional intent that the APA and/or TCA exclusively governs emissions- and environment-based claims arising out of a tobacco product. The APA allows interested persons to challenge rules promulgated by a federal agency, but it does not foreclose civil action for relief under state law. Further, contrary to Philip Morris' position that the TCA completely preempts Plaintiff's state law claims, the TCA expressly provides:

> Except as provided in paragraph (2)(A), nothing in this chapter, or rules promulgated under this chapter, shall be construed to limit the authority of a Federal agency (including the Armed Forces), a State or political subdivision of a State, or the government of an Indian tribe to enact, adopt, promulgate, and enforce any law, rule, regulation, or other measure with respect to tobacco products that is in addition to, or more stringent than, requirements established under this chapter, including a law, rule, regulation, or other measure relating to or prohibiting the sale, distribution, possession, exposure to, access to, advertising and promotion of, or use of tobacco products by individuals of any age . . . .

21 U.S.C.S. § 387p(a)(1).

And although § 387p(a)(2)(A) of the TCA provides that, in general, "[n]o State or political subdivision of a State may establish or continue in effect with respect to a tobacco product any

15

requirement which is different from, or in addition to, any requirement under the provisions of this chapter relating to tobacco product standards, premarket review, adulteration, misbranding, labeling, registration, good manufacturing standards, or modified risk tobacco products," § 387p(a)(2)(B) allows that "[s]ubparagraph (A) does not apply to requirements relating to the sale, distribution, possession, information reporting to the State, exposure to, access to, the advertising and promotion of, or use of, tobacco products by individuals of any age, or relating to fire safety standards for tobacco products."

Based on the plain language of these statutes, the court concludes that Congress did not intend either to preempt Plaintiff's claims and that Philip Morris has not overcome the presumption against complete preemption. *Lontz,* 413 F.3d at 441 (citing *Custer*, 89 F.3d at 1167). Accordingly, Philip Morris has not carried its removal burden to demonstrate federal question jurisdiction exists under the doctrine of complete preemption.

## IV.  CONCLUSION

For the foregoing reasons, by separate order, Plaintiff MCCB's Motion to Remand is granted; this case is remanded to the Circuit Court for Baltimore City, Maryland.

/S/

Julie R. Rubin
United States District Judge

January 19, 2024